UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

In re:

LINDY M. MADILL,                                Miscellaneous Proceeding

               Respondent.
───────────────────────────────────────

**THE UNITED STATES TRUSTEE'S MOTION FOR AN ORDER HOLDING LINDY M. MADILL IN CIVIL AND CRIMINAL CONTEMPT OF COURT, PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 9020 AND 9014, 11 U.S.C. § 105, LOCAL RULES OF PRACTICE FOR THE NORTHERN DISTRICT OF NEW YORK 83.4 AND 83.5, AND 18 U.S.C. §§ 401 AND 402, FOR VIOLATIONS OF THE ORDER APPROVING STIPULATION OF RESIGNATION**

TO:    THE HONORABLE MARGARET M. CANGILOS-RUIZ, CHIEF UNITED STATES BANKRUPTCY JUDGE:

The United States Trustee for Region 2 (the "United States Trustee"), in furtherance of his duties and responsibilities, pursuant to 28 U.S.C. § 586(a)(3) and (5), does hereby move this Court for an order holding Lindy M. Madill ("Ms. Madill") in civil and criminal contempt of this Court, pursuant to Federal Rules of Bankruptcy Procedure 9020 and 9014, 11 U.S.C. § 105, Local Rule of Practice for the Northern District of New York 83.4 and 83.5, and 18 U.S.C. §§ 401 and 402, for violations of the Order Approving Stipulation of Resignation and the terms of the Stipulation, and for an order referring Ms. Madill to the New York State Attorney General pursuant to New York Judiciary Law §476(a), and for certification of the record herein, together with proposed findings of fact and conclusions of law and transmission of same to District Court for the Northern District of New York pursuant to Federal Rule of Bankruptcy Procedure 9033 (the "Motion"). In support of the Motion, the United States Trustee represents and alleges as follows:

## BACKGROUND

1. This is a contested matter pursuant to Fed. R. Bankr. P. 9014 and 9020 and core proceeding under 28 U.S.C.A. § 157(b). Jurisdiction arises under 28 U.S.C.A. § 1334 and 11 U.S.C.A. § 105(a).

2. The Motion arises from the Stipulation of Resignation entered into by and between Lindy M. Madill, Stewart L. Weisman, Esq., as Attorney for Ms. Madill, and William K. Harrington, the United States Trustee for Region 2, by Guy A. Van Baalen, Esq. (the "Stipulation"), (*In re Rendell M. Thomas, Case. No. 14-30919,* Dkt. 113), and subsequent Order Approving Stipulation Resulting in Permanent Resignation of Attorney Madill from Practice before the United States District Court, Northern District of New York, signed by Chief Bankruptcy Judge Margaret Cangilos-Ruiz and Chief U.S. District Court Judge Glenn T. Suddaby and entered on February 29, 2016 ("Order Approving Stipulation of Resignation"), (*In re Rendell M. Thomas, Case. No. 14-30919,* Dkt. 114).

3. The Motion seeks an order holding Ms. Madill in contempt, both civilly and criminally. The United States Trustee submits that Ms. Madill committed serial and egregious violations that warrant punitive sanctions in the most severe form. Accordingly, the United States Trustee requests that the Court hear this matter, issue findings of fact and conclusions of law, and certify the record to the District Court for further proceedings.

4. The Motion, together with all Affidavits and accompanying Exhibits, has been served upon Ms. Madill and her counsel as required by Fed. R. Bankr. P. 7004.

5. The Stipulation has been in full force and effect since the parties executed it on February 24, 2016. The Stipulation and the Order Approving the Stipulation permanently enjoined Ms. Madill from the practice of law before the Bankruptcy and Federal Courts for the

Northern District of New York. Likewise, the Stipulation required Ms. Madill to comply with a number of its provisions.

6. Accordingly, Ms. Madill has, at all relevant times herein, had full knowledge of the Stipulation and its terms, having signed it personally and under the guidance of competent counsel.

7. As set forth below, Ms. Madill failed to comply with and violated the terms of the Stipulation. Each violation is further detailed in the Affidavit of Guy A. Van Baalen, Esq., filed in support of this Motion, and incorporated by reference as if fully set forth herein.

## LEGAL AUTHORITY

**Contempt Generally**

8. As amended in 2001, Fed. R. Bankr. P. 9020 provides that "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest." The 2001 amendment to this rule removed prior language setting forth a restrictive procedure for contempt proceedings in bankruptcy courts. Fed. R. Bankr. P. 9020, Advisory Comm. Note -2001 Amendment.

9. Bankruptcy Courts have embraced their inherent contempt authority as a power "necessary to the exercise of all others." *In re Chief Executive Officers Clubs, Inc.,* 359 B.R. 527, 532 (S.D.N.Y. 2007) (*citing Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 831, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) ("Courts independently must be vested with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and to preserve themselves and their officers from the approach and insults of pollution."); *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (stating that contempt powers are "the most prominent" of court's inherent

powers "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court"); *Sigety v. Abrams,* 632 F.2d 969, 976 (2d Cir.1980) ("The power to fine and imprison for contempt, from the earliest history of jurisprudence, has been regarded as a necessary incident and attribute of a court, without which it could no more exist than without a judge.").

**Civil Contempt**

10.     A court's inherent power to hold a party in civil contempt may be exercised only when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply. *In re Chief Executive Officers Clubs, Inc.,* 527 at 535 (*citing King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995)); *Monsanto Co. v. Haskel Trading, Inc.,* 13 F. Supp. 2d 349, 363 (E.D.N.Y. 1998). "Clear and unambiguous" means that the clarity of the order must be such that it enables the enjoined party "to ascertain from the four corners of the order precisely what acts are forbidden." *Monsanto Co.,* 13 F. Supp. 2d at 363; *see also Terry,* 886 F.2d at 1351–52 (finding that the order could serve as the foundation for a contempt citation because it was sufficiently specific and clear as to what acts were proscribed to enable defendants to ascertain precisely what they could and could not do).

11.      "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp.,* 277 F.3d 243, 250 (2d Cir. 2002) (citation omitted); *see also Perez v. Danbury Hospital,* 347 F.3d 419, 423–24 (2d Cir. 2003) (stating that the evidence of noncompliance with the order must be clear and convincing). *See id.*

12. Bankruptcy courts possess the power to impose sanctions for acts of civil contempt by statute under 11 U.S.C. § 105(a). *See In re Chateaugay Corp.,* 920 F.2d 183, 187 (2d Cir.1990); s*ee also*, *In re Stockbridge Funding Corp.*, 145 B.R. 797, 804 (S.D.N.Y. 1992).

13. This Court's predecessor recognized the court's power to issue civil contempt orders in the *In re Hotel Syracuse* case (90-02921) [ECF Dkt. 290], (*citing In re Patterson*, 111 B.R. 395 (Bankr. N.D.N.Y. 1989)). Northern District of New York Bankruptcy Court Judge Stephen D. Gerling recognized further, however, that contempt is a sanction which is not to be taken lightly, *In re Hulon*, 92 B.R. 670, 676 (Bankr. N.D.Tex. 1988), (*citing In re Smith and Son Septic and Sanitation Services*, 88 B.R. 375, 379 (Bankr. D.Utah 1988)). It is "a serious sanction that should only be exercised in the most egregious of circumstances and primarily for the purposes of controlling cases and proceedings and the behavior of the parties before the court." *Id*.

**Criminal Contempt**

14. 18 U.S.C. § 401 provides that a court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other as –

  **(1)** Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
  **(2)** Misbehavior of any of its officers in their official transactions;
  **(3)** Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.
  18 U.S.C. §401.

15. The bankruptcy court is a unit of the district court under 28 U.S.C. § 151. Therefore, the courts are one court for purposes of 18 U.S.C. § 401 under the designation of 28 U.S.C. § 151.

*See U.S. v. Guariglia*, 962 F.2d 160 (2d Cir. 1992) (an order originating from a unit of the district court constitutes an order of both the bankruptcy court and the district court).

16. It is recognized, however, that the power of the bankruptcy court diverges in its ability to punish for criminal contempt. *See U.S. v. Guariglia*, 962 F.2d 160 at 163 (*citing* Bank. R. 9020, Advisory Comm. Note -1987 Amendment).

17. Other circuit courts have similarly recognized that the bankruptcy court has inherent powers to find contempt, but that the powers do not extend to punishment for criminal contempt. *See e.g., In re Dyer*, 322 F.3d 1178 (9th Cir. 2003); *In re Hipp, Inc.*, 895 F.2d 1503 (5th Cir. 1990); *In re Ragar*, 3 F.3d 1174 (8th Cir. 1993).

18. Notwithstanding, bankruptcy courts have the power to proceed in making findings of criminal contempt in bankruptcy court. *See In re Downing*, 195 B.R. 870, 874 (Bankr. D. Md. 1996). Such findings can be transmitted to the District Court for sentencing. *See In re Downing*, 195 B.R. at 874 (*citing In re Finney*, 167 B.R. 820 (E.D.Va. 1994)).

19. Under usual circumstances, criminal proceedings require a de novo review by the District Court. But the facts in this case allow a departure from typical procedure. Therefore, the United States Trustee submits that this Court should hear the motion for contempt, both civil and criminal, and transmit its finding to the District Court.

20. Such a process is available in this Court under *U.S. v. Guariglia*, 962 F.2d 160. While the Second Circuit determined that the bankruptcy court did not have the power to *punish* for criminal contempt, the court did not prevent a bankruptcy court from making a finding that a person's conduct is so egregious that criminal sanctions are warranted. The extent of those sanctions can be left for determination by the District Court.

**New York Judiciary Law § 476-a and §478**

21. New York Judiciary Law § 476(a) provides, in part:

The attorney-general may maintain an action upon his or her own information or upon the complaint of a private person or of a bar association organized and existing under the laws of this state against any person, partnership, corporation, or association, and any employee, agent, director, or officer thereof who commits any act or engages in any conduct prohibited by law as constituting the unlawful practice of the law. The term "action" as used in this subdivision shall be construed to include both civil actions and criminal actions.

22.     New York Judiciary Law § 478, provides further, in part:

It shall be unlawful for any natural person to practice or appear as an attorney-at-law or as an attorney and counselor-at-law for a person other than himself or herself in a court of record in this state, or to furnish attorneys or counsel or an attorney and counsel to render legal services, or to hold himself or herself out to the public as being entitled to practice law as aforesaid, or in any other manner, or to assume to be an attorney or counselor-at-law, or to assume, use, or advertise the title of lawyer, or attorney and counselor-at-law, or attorney-at-law or counselor-at-law, or attorney, or counselor, or attorney and counselor, or equivalent terms in any language, in such manner as to convey the impression that he or she is a legal practitioner of law or in any manner to advertise that he or she either alone or together with any other persons or person has, owns, conducts or maintains a law office or law and collection office, or office of any kind for the practice of law, without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state, and without having taken the constitutional oath.

## **ARGUMENT**

23.     Under the Second Circuit standards, Ms. Madill's conduct unquestionably warrants a finding of civil contempt. First, the Stipulation and Order are clear and unambiguous. Second, the proof of Ms. Madill's noncompliance, attested to through a number of affidavits of her former clients, and through her own actions, is clear and convincing. Finally, not only did Ms. Madill make no attempt to comply, she violated the terms of the Stipulation knowingly and willingly.

24.     The record provides sufficient proof to show that, with certainty, a violation occurred. Accordingly, the United States Trustee has met its burden by clear and convincing

evidence that Ms. Madill violated the terms of the Stipulation and Order and should be held in civil contempt.

25. Indeed, Ms. Madill's conduct is so egregious that a finding of criminal contempt is likewise warranted. Case law has established three general elements to the crime of contempt: the court must have issued a reasonably specific order; the contemnor must have violated the order; and the contemnor must have acted willfully. "Civil and Criminal Contempt in Bankruptcy Court," USA Bulletin, Vol. 47, No. 4 (August 1999), Clifford J. White, III., www.justice.gov/ust/civil-and-criminal-contempt-bankruptcy-court.

26. This Court's Order approving the Stipulation, dated February 29, 2016, approved certain agreed upon terms between and among the parties. The Stipulation enumerated unambiguous conditions and requirements associated with Ms. Madill's permanent resignation from the practice of bankruptcy law. In particular, Ms. Madill agreed not to have any involvement with any pending bankruptcy cases or accept any fees. Ms. Madill agreed to refund funds owed to clients as of the date of the Stipulation. Ms. Madill was required to notify all of her clients. Ms. Madill agreed to, and consented to an order and judgment, for the payment of restitution to Syracuse Fire Department Employees Federal Credit Union.

27. There is overwhelming evidence that Ms. Madill violated the terms of the Stipulation in reckless disregard of the impact on her former clients. Moreover, additional evidence emerged demonstrating a pattern of misrepresentations and fraud upon the Court, the United States Trustee, and her clients. In the negotiation of the Stipulation, the United States Trustee detrimentally relied on many of Ms. Madill's misrepresentations.

28. The record shows that Ms. Madill's violations of the Stipulation were done knowingly, and in some instances, in an effort to conceal prior misrepresentations she made to

the Court and to the United States Trustee. Specifically, Ms. Madill's notification to her clients was inadequate and misleading. This provided an opportunity for Ms. Madill to continue to have ongoing, substantive contact with her clients after the date of the Stipulation with one such contact coming as recently as April 5, 2016. Ms. Madill continued to obtain documents and signatures from clients on bankruptcy forms. In some instances, Ms. Madill attempted to obtain signatures on documents that she represented clients had already signed.

29. In multiple clients' sworn statements referred to and attached as part of the supporting Affidavit of Assistant United States Trustee Guy A. Van Baalen, Ms. Madill held herself out as an attorney authorized to practice bankruptcy law in the Northern District of New York. These clients entrusted their financial troubles to her, and Ms. Madill took advantage of them.

30. In clear violation of the Stipulation, Ms. Madill continued to collect attorney fees for a future bankruptcy case without advising the client of her resignation, and withheld the funds until the misrepresentation was discovered by the United States Trustee. *See Sparks Affidavit, Exhibit "2".*

31. Moreover, Ms. Madill's continued involvement in her clients' cases was a mechanism to conceal a scheme of misappropriating fees. In the days following Ms. Madill's resignation, the Office of the United States Trustee discovered numerous cases where Ms. Madill represented to the Court that her client did not pay her attorney fee or the filing fee, when in fact, they had. *See Bauso Affidavit, Exhibit "6", Coffin Affidavit, Exhibit "7", Cronk, Darling Affidavits, Exhibit "9", and Cutillo Affidavit, Exhibit "10".*

32. Leading up to her resignation, Ms. Madill repeatedly ignored considerations that were afforded to her in an effort to assist her in fixing what was perceived to be nothing more

than bad practice habits and/or unfamiliarity with certain rules of practice. The United States Trustee, the Court, members of the bar, and the New York State Grievance Committee have all invested significant amounts of time in trying to rehabilitate Ms. Madill.

33. The Court recognized Ms. Madill's shortcomings and substandard practices as far back as October 1, 2014 relative her conduct in the *In re Rendell Martese Thomas (Ch. 13 Case No. 14-30919)* which resulted in an Order relieving Ms. Madill as counsel. Thereafter, on January 28, 2015, the Court issued a 90 day suspension of Ms. Madill's ability to file cases so she could make the necessary changes to sufficiently raise the level of her practice with the help of a mentor. The Court, giving Ms. Madill the benefit of the doubt, lifted that suspension by order dated April 24, 2015 notwithstanding Ms. Madill's noncompliance with the Court's January order. Ms. Madill has shown no improvement despite begin given every opportunity to comply with directives and requirements asked of her. Ms. Madill has willfully chosen not to comply.

34. The primary purpose of a civil contempt sanction is "to coerce the contemnor into compliance," however, if the imposition of that sanction would serve no legitimate purpose, a finding of criminal contempt should be considered. *See In re Rood*, 2009 WL 3614851 (Bankr. D. Md. 2009). Here, a civil sanction alone is insufficient to coerce Ms. Madill's compliance. Ms. Madill has not considered any order of this Court serious enough to obey.

35. For the reasons discussed above, dill's conduct can only be regarded as a willful act to engage in the unauthorized practice of law before this Court. Therefore, in addition to a finding of contempt, her conduct warrants a referral to the New York State Attorney General for further proceedings under New York Judiciary Law § 476-c.

36. Accordingly, the United States Trustee requests civil and criminal contempt sanctions as follows:

- Further admonition to cease practicing
- Monetary sanctions
- Incarceration should Ms. Madill continue to violate the Stipulation and Order
- Turnover of a full and truthful accounting, including personal banking records, filed and not filed, along with fees received
- Referral to the New York State Grievance Committee
- Referral to the New York Attorney General
- Referral to the District Court for further sanctions

## CONCLUSION

WHEREFORE, based on the foregoing, the United States Trustee respectfully requests that the Court enter an order holding Lindy M. Madill in civil and criminal contempt of court, and for an order referring Ms. Madill to the New York State Attorney General pursuant to New York Judiciary Law §476(a), and for certification of the record herein, together with proposed findings of fact and conclusions of law and transmission of same to District Court for the Northern District of New York, for further proceedings pursuant to Federal Rule of Bankruptcy Procedure 9033.

Dated: April 11, 2016                Respectfully submitted,

**WILLIAM K. HARRINGTON**
**UNITED STATES TRUSTEE**
**FOR REGION 2**

　　　/s/ Erin P. Champion
By: Erin P. Champion
Trial Attorney
105 U.S. Courthouse & Federal Building
Utica, New York 13501
(315) 793-8191